**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BURGESS ROE and JANE J. ROE,** | : | **No. 11-816** |
| *Plaintiffs,* | : | **[Filed Electronically]** |
| ***vs.*** | : | |
| | : | **Judge Mariani** |
| **CHIEF EXPLORATION & DEVELOPMENT LLC, *et al.,*** | : | |
| | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| **MICHAEL BEINLICH and LORI BEINLICH,** | : | **No. 11-697** |
| *Plaintiffs,* | : | **[Filed Electronically]** |
| ***vs.*** | : | |
| | : | **Judge Mariani** |
| **CHIEF EXPLORATION & DEVELOPMENT LLC, *et al.,*** | : | |
| | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| **DAVID C. BEINLICH and KAREN F. BEINLICH,** | : | **No. 11-579** |
| *Plaintiffs,* | : | **[Filed Electronically]** |
| ***vs.*** | : | |
| | : | **Judge Mariani** |
| **CHIEF EXPLORATION & DEVELOPMENT LLC, *et al.,*** | : | |
| | : | |
| *Defendants.* | : | |

**STATEMENT OF MATERIAL FACTS NOT IN**
**DISPUTE OF CHIEF DEFENDANTS IN SUPPORT**
**OF THEIR MOTION FOR SUMMARY JUDGMENT**

1. Burgess Roe and Jane Roe own property in Sullivan County, Pennsylvania. (U)

2. On October 28, 2005, the Roes entered into an oil-and-gas lease with Keeton that allowed for the lessee (or its assignee) to explore on and, if appropriate, develop oil or gas wells on the Roes' property. (U)

3.	The Michael Beinlich and Lori Beinlich likewise own property in Sullivan County, and they entered into an oil-and-gas lease with Keeton on October 25, 2005. (U)

4.	David Beinlich and Karen Beinluch own property in Sullivan County and entered into an essentially identical lease on October 25, 2005.

5.	The leases in all three cases include two identical provisions of particular relevance here.

a.	First, in a provision entitled "LEASE TERM," the leases provide that their primary terms would last five years "or for as long thereafter as operations are conducted on the Leasehold in search of production of oil, gas, or their constituents, or for as long as a well capable of production is located on the Leasehold, or for as long as extended by other provisions herein…" *See* M. Beinlich Lease at 1, D. Beinlich Lease at 1 and Roe Lease at 1 (attached at Tabs "A," "B" and "C," respectively).[1]

b.	The other relevant provision, entitled "UNITIZATION," allows the lessee to combine the leased property with

---

[1]	When the leases refer to the "term" of the lease, they are referring to its duration. A typical oil-and-gas lease like the ones at issue here are often described as having two terms: a "primary" term (usually a fixed term) and a secondary or "perpetual" term.  When this brief refers to the "primary term" of the leases, it is referring to the first period of time for which the lease is operative, which in the case of each lease at issue here was five years. The issue in the case is whether any of the provisions of the leases served to extend the lease term beyond the primary term and into the secondary, perpetual term.

other leased properties to form a larger drilling "unit." *See* M. Beinlich Lease at 2, D. Beinlich Lease at 2 and Roe Lease at 2.[2]

c.    The provision provides that "… the drilling, operations in preparation for drilling, production from, or payment of Royalty, Shut-in Royalty, or Delay in Marketing for a well on such a unit shall have the same effect upon the terms of this Lease as if the well were located on the Leasehold." *Id.*

d.    It also provides that if the leased property were to be placed into a unit and gas or oil were produced from anywhere on the unit, the landowners would be entitled to a royalty in proportion to the number of acres they own to the entire acreage in the unit. *Id.*

6.    Through a series of assignments, the lessee's interests in each of the three leases at issue in this case are now with the Chief Defendants. (U)

---

[2]    As the Court may know, oil-and-gas leases often include "pooling" or "unitization" clauses that allow the lessee to group properties into drilling units. Unitization provisions are useful to the lessee and to the lessor. The provisions benefit the lessee (usually an oil-and-gas producer) because geological formations often cross man-made property boundaries such that operations often cannot be confined to one property, or it makes better environmental or economic sense to operate multiple properties as one unit rather than operating and disturbing the surface of every individual property within the unit. In addition, most unitization provisions (including those in this case) provide that activity on any part of the unit will be treated as though it happened on each lessor's property for purposes of extending lease terms. The unitization provisions benefit the lessor (usually the landowner) because they create the potential for the lessor to share in a royalty even though there is no well on the lessor's property. As with the provisions in these cases, unitization provisions generally provide that each lessor in the unit will receive a proportional share of any royalty from production on the unit.

7.  On September 29, 2010, the Chief Defendants filed in the office of the Sullivan County recorder of deeds a declaration of pooling and unitization agreement for what it called the Castrogiovanni Unit. *See* Declaration of Pooling and Unitization Agreement (the "Unit Declaration") (attached at Tab "D.")

8.  The Castrogiovanni Unit includes more than a dozen parcels of property, including the M. Beinlich, D. Beinlich and Roe properties. *Id.*[3]

9.  On October 7, 2009, Chief entered into a master service agreement with T.A.W., Inc. ("TAW"), calling on TAW to perform certain work, including construction of a natural-gas well pad on the Castrogiovanni Unit. (CED00365-371) *See* Declaration of Michael D. Hritz (attached at Tab "E")[4]

10.  On March 10, 2010, Chief established the coordinates for the location of a well on the Castrogiovanni Property. (CED00022) *Id.*

---

[3]  Throughout this statement, the Chief Defendants will refer to both the "Castrogiovanni Unit" and the "Castrogiovanni Property." It is perhaps helpful to clarify the distinction between those two terms. The "Castrogiovanni Property" is the parcel owned by Mat and Cathy Castrogiovanni that they leased to Chief and on which Chief constructed a natural-gas well. The "Castrogiovanni Unit" is the group of properties created by the unit designation, and it includes the Castrogiovanni Property, the David/Karen Beinlich property, the Michael/Lori Beinlich property, the Burgess/Jane Roe property and several others.

[4]  The documents supporting each of these assertions accompany the declaration of Mr. Hritz. The Chief Defendants produced these documents to Plaintiffs during discovery, and each page bears a Bates number starting with "CED ___." For ease of reference, the Chief Defendants offer the Bates numbers for each document to which they refer.

11.   On March 31, 2010, Chief submitted the well location information to its surveying contractor. (CED00022) *Id.*

12.   On April 1, 2010, that surveying contractor, Borton-Lawson Engineering, Inc. ("B-L"), began its surveying work for the Castrogiovanni well survey. (CED00378) *Id.*

13.   On April 12, 2010, B-L conducted field surveys on the Castrogiovanni Unit. (CED00023, CED00378) *Id.*

14.   On April 20, 2010, B-L conducted additional field surveys and staked the location on the Castrogiovanni property where the well pad would be constructed. (CED00018, CED00378) *Id.*

15.   By April 20, 2010, the Pennsylvania Department of Transportation had visited the Castrogiovanni site to consider issues related to proper entry and access points. *Id.*

16.   On April 21, 2010, Chief received a well plat from B-L (the surveyor) indicating where the proposed well should be placed on the Castrogiovanni property. (CED00022-23, CED00036-38) *Id.*

17.   On April 26, 2010, Chief prepared its application to the Pennsylvania Department of Environmental Protection (the "DEP") for a drilling permit, and Chief sent notice to the Castrogiovannis that it had done so. (CED00027-30) *Id.*

18.   By April 29, 2010, Chief had confirmed that there were no wetlands on the Castrogiovanni property. (CED00018) *Id.*

19.   On May 4, 2010, Chief submitted the final plat and drilling-permit application for the Castrogiovanni property to the DEP. (CED00024-38, CED00043) *Id.*

20.   By June 4, 2010, Chief's consultant on the project, Dieffenbauch & Hritz, LLC ("D&H"), had begun work on the

preparation of an Erosion and Sediment and Stormwater Control Plan (an "E&S Plan") for the construction of the Castrogiovanni well pad. (CED00396-398) *Id.*

21.    On June 11, 2010, the DEP issued a drilling permit for the Castrogiovanni Unit well. (CED00039-40, CED00043) *Id.*

22.    On June 22, 2010, the Susquehanna River Basin Commission (the "SRBC") issued a permit for Chief to withdraw water for use in the construction of a well on the Castrogiovanni property. (CED00041-43) *Id.*

23.    Between August 20, 2010, and August 23, 2010, Chief provided additional information to B-L (the surveyor), and B-L conducted additional field surveys on the Castrogiovanni property. (CED00044, CED00045, CED00057, CED00380) *Id.*

24.    On August 24, 2010, Chief prepared an amended permit application to DEP to allow a horizontal well (the first permit was for a vertical well), and Chief gave notice to the Castrogiovannis that they had done so. (CED00055-56, CED00202-203, CED00205) *Id.*

25.    On September 3, 2010, Chief conducted necessary environmental reviews on the Castrogiovanni property. (CED00111-113, CED00131-148) *Id.*

26.    On September 7 and 13, 2010, Chief finalized the well plat for the Castrogiovanni property and finalized several necessary regulatory submissions related to drilling on the Castrogiovanni property. (CED00048, CED00053-59, CED00150-217, CED00203-204, CED00207-208, CED00372) *Id.*

27.   On September 22, 2010, the DEP recognized as complete Chief's application for an Erosion and Sediment Control General Permit (the "ESCGP-1 permit"). (CED00223, CED00253-254) *Id.*

28.   On September 25, 2010, Chief executed the pooling and unitization agreement that included the Roe and Beinlich properties in the Castrogiovanni Unit. (CED00238-252) *Id.*

29.   On October 4, 2010, the DEP issued the ESCGP-1 permit. (CED00255-261) *Id.*

30.   On October 14, 2010, Chief's performance bond for the construction of the Castrogiovanni well became effective. (CED00399-400) *Id.*

31.   On October 21, 2010, Chief recorded the declaration of pooling and unitization agreement. (CED00252) *Id.*

32.   On October 23, 2010, Plaintiff Burgess Roe was walking on the road adjacent to the Castrogiovanni Property when he saw two trucks parked on the property. He spoke to men he saw near the truck and they identified themselves as surveyors. Mr. Roe observed the men surveying the property and driving stakes into the ground. *See* Deposition of Burgess Roe at 31-32 (relevant pages are attached at Tab "F.")

33.   To Mr. Roe's observation, the surveyors completed staking the property no later than October 24, 2010. *See* B. Roe Depo. at 32.[5]

---

[5]   Notably, Mr. Roe also testified that he took frequent walks on the Castrogiovanni property (with permission) and that, in the spring of 2010, months before the purported lease expirations, he saw that the location for the well pad on the Castrogiovanni property had been staked. *See* B. Roe Depo. at 33-34.

34.     Michael Beinlich also saw that the property was staked by October 24, 2010. *See* Deposition of Michael Beinlich at 78-80 (relevant pages are attached at Tab "G.")

35.     David Beinlich testified that he saw at least a dozen stakes in place on the Castrogiovanni property no later than October 23, 2010. *See* Deposition of David Beinlich at 45-46 (relevant pages are attached at Tab "H.")

36.     On October 23, 2010, Mr. Roe saw that Chief's contractor had delivered a bulldozer to the Castrogiovanni property. *See* B. Roe Depo. at 36.

37.     Michael Beinlich saw the same thing. *See* M. Beinlich Depo. at 80.

38.     David Beinlich saw the same thing. *See* D. Beinlich Depo. at 41-42.

39.     On October 27, 2010, Mr. Roe saw a lumber contractor cut down trees to clear for an access road to the well pad location on the Castrogiovanni property. *See* B. Roe Depo. at 37-38.

40.     Karen Beinlich testified that she saw crews clearing lumber on October 28, 2010. *See* Deposition of Karen Beinlich at 71 (relevant pages are attached at Tab "I.").

41.     Within the next two weeks, Mr. Roe saw the following on the Castrogiovanni property: a logging crew, four or five bulldozers, three or four trucks and 20 people. *See* B. Roe Depo. at 53.

42.     From October 23, 2010, Chief and its contractors worked essentially continuously on the site until they completed a well on the Castrogiovanni property in March 2011. *See* Hritz Declaration at ¶ 6.[6]

43.     On October 27, 2010, Mr. Roe saw a worker from Chief's timber contractor on the property cutting down trees. *See* Roe Depo. at 49-50.

44.     Mr. Roe testified that, on October 28, 2010, there were four or five workers on the site. *See* Roe Depo. at 50.

45.     That same day, Mr. Roe saw workers use the bulldozer on the Castrogiovanni Unit to begin clearing a path to construct a road to gain access to the well-pad location. *Id.* at 51.

Respectfully submitted,

**K&L GATES LLP**

May 4, 2012

s/ David R. Fine
David R. Fine (PA66742)
david.fine@klgates.com
George A. Bibikos (PA91249)
george.bibikos@klgates.com
Market Square Plaza
17 North Second Street, 18th Fl.
Harrisburg, PA 17101
(717) 231-4500 (tel.)
(717) 231-4501 (facs.)
*Counsel for the Chief Defendants*

---

[6]     The Chief Defendants say "essentially continuously" because the crews did not work every day. There were weekend days when no work was performed, holidays when no work was performed and days when no work was performed on the site but work was being performed elsewhere in preparation for work on the site. *See* Hritz Decl. at ¶¶ 5.

<u>**CERTIFICATE OF SERVICE**</u>

I certify that, on May 4, 2012, I filed the attached electronically such that it will be served automatically on the following:

John A. Shoemaker, Esq.
PO Box 328
Montoursville, PA 17754
*Counsel for Roe Plaintiffs*

J. Howard Langdon, Esq.
3 South Main Street
Muncy, PA 17756-1306
*Counsel for M. Beinlich Plaintiffs*

Christian A. Lovecchio, Esq.
602 Pine Street
Williamsport, PA 17701
*Counsel for D. Beinlich Plaintiffs*

Russell L. Schetroma, Esq.
Brian J. Pulito, Esq.
STEPTOE & JOHNSON, PLLC
201 Chestnut Street, Suite 200
Meadville, PA 16335
*Counsel for The Keeton Group*

/s David R. Fine